v. Tucker. Okay. Good morning, Mr. Silverman. You've reserved three minutes for rebuttal. Thank you, Your Honor. So that gives you seven to begin. You may proceed. Thank you. Good It's not just that Mr. Tucker learned in the middle of his trial that his court-appointed attorney was proffering and entering into a proactive cooperation arrangement. And it's not just that it was the same U.S. Attorney's Office that was prosecuting his client. And it's not just that his attorney was a subject, which is a term of art meaning someone who could not be indicted or treated as a witness and was at a focal point in the investigation of the case involving him. Well, let's be clear. This is a situation where he was, he reported that somebody was threatening him, right? He was the victim of a crime there. And in the course of discussing that as to why he, what the motive for him being targeted was, it might have led to other things, right? Misconduct or something that could put him at risk of some kind of prosecution. We don't know whether it was the leverage that was what put him at risk, that is the leverage that the extortionist had over him or the way he found the money, because there was a failure of the inquiry responsibility of figuring out the full nature of the conflict. What we know is that the government's letter at age 69 and the district court statements at pages 11 to 13 of the Curcio transcript are that he had reason to be concerned that he could be criminally prosecuted. And then more fundamentally, while this is happening, and James Roth, who I know, who the court knows, the second seat, says, can we get independent Curcio counsel? He's explicitly denied. And Mr. Tucker is told that the choice that he has is between continuing the trial later that day with the conflicted lawyer or continuing the trial later that day with a lawyer who is not able competently to handle this on his own. And that was no choice at all. So, and there's just no dispute that that's what happened. And... Can I back up just for a second? Because, I mean, the certificate of appealability here is really the limit of what we're arguing on the 2355. And there it seems to me to basically be asking us to decide whether there's a per se conflict with the two circumstances that you've mentioned here, where there's a person who's engaged in a proper session with the same U.S. Attorney's Office that's prosecuting the petitioner, and there's a failure to appoint an independent counsel to do the Curcio hearing. And so I, that's a pretty technical legal question it seems to me. Have I got that wrong or is that really the limit of what we're looking at? Judge Jacobs would be the stronger expert on the certificate of appealability. But yes, I think it's this unwaivable conflict. I agree that whether it's per se is held up in that. And this conflict clearly falls within the... It would be unwaivable if it was actual and no reasonable defendant would waive it. It would be, there are unwaivable conflicts that are not per se. Yes, Your Honor. But this conflict is both. First, looking at the per se cases, the foundational cases, Salina and Cancilla. And it's really Cancilla that puts the meat on the bones of the doctrine because it's in Cancilla where this Court rejects the government's urging to confine Salina to the facts of the case and instead applies what it calls the controlling reasoning of Salina, which is that a conflict is per se when a lawyer, a defense lawyer, would be so afraid that fighting vigorously and fighting hard could bring real risk to himself. And so there are two factual scenarios where this Court has applied that doctrine, but it's never seen a factual scenario like this. But it's just what seems strange to me is that normally the way you would deal with what happens at a cursio hearing is to say, well, was there a knowing or intelligent waiver? But that's not what's been teed up with the certificate of appealability. Your Honor, the Court drafted the certificate of appealability following argument. And the certificate of appealability encompasses waivability and also encompasses the critical flaw in the cursio proceeding because without independent counsel, no one was there to advise Tucker to seek a mistrial, to seek a continuance, to seek full inquiry. No one was there to explain to him how the cooperation process works. But that would normally be teed up as a question of whether or not the waiver that took place was a knowing and intelligent one, right? I think that you could phrase this another way, Your Honor. Normally it would be the government that says, no harm, no foul, because there was a knowing and intelligent waiver. And here the government's saying that discussions about the cursio hearing are outside the scope of the certificate of appealability. And that's telling. But in terms of the question of – Well, I mean, it is a mysterious certificate of appealability in some ways. I think it makes sense, Your Honor, and I defer to the Court, because if the conflict is unwaivable, as Judge Jacobs said, whether because it's per se or merely unwaivable, a cursio – Okay. But, I mean, we have said that somebody who is charged with a crime, not like this case where there's a proffer, but charged with a crime, that that's not – when the attorney is charged with a crime that's unrelated to the crime that is facing the petitioner, that is still waivable, right? Well, I think the Armenti case actually vacated – rebanded for further fact-finding. So there was no ruling there. Right. But it's not – I mean, that's not a per se unwaivable conflict. You could have – I – The only two per se conflicts that we've identified are where the person is not an attorney, where the lawyer is not an attorney at all, and where the lawyer is involved in the same criminal conduct that is at issue in the petitioner's case, right? That's true, but these facts have never been before the Court. There has never been a case where the lawyer is under investigation by the same U.S. Attorney's office and is a proactive cooperator. Presumably that means a fency letter, who's proffering in the middle of the trial. Nothing like this has ever been before the Court. But wasn't – wasn't Roth independent? No, Your Honor. Because Roth – Why is Roth not independent? Because he expressed that he couldn't handle the case alone. So he is – But that doesn't – that's not a matter of his independence. Well, no one – That's not a matter of independence. If he knows that he can't handle the case alone, he has an interest in telling Tucker to waive the conflict or that it's a waivable conduct – conflict. He is in no position to say, no, go ahead and say you don't want Ginsburg and leave me here alone even though I can't do this. He clearly has – and he tells the district judge. He says to the district judge, aren't we going to bring in independent counsel? And the district judge says, why? The duty day – the duty day CJA lawyer would almost always – I've never seen a cursio proceeding without the duty day CJA lawyer. Now, that would have slowed things down. And the district judge clearly is caught off guard here. This is coming out of nowhere. He doesn't have time to digest it. He has told the jury, according to the transcript, we're going to resume at 1230. So he's given himself a couple of hours. Tucker says he's had 15 minutes to discuss the government's letter with his lawyer before the cursio proceeding. But I want to get back to Judge Jacobs' questions about actual conflicts that are not per se, because I think – Ruff was the – Ruff was the one who was initially appointed, right? He was the first appointed, but it was in the transcript of the cursio proceeding and all the affidavits that Ginsburg was in the lead, Ginsburg was handling the case. And more importantly, Ginsburg associate, who Tucker was told would have to leave the case with Ginsburg, is the one that managed the electronic database that allowed you to access all the vast documents in this kind of white-collar case. In this day and age, this is not like a robbery trial, even when I started practicing and certainly before that, where one lawyer can show up at the table and try the case for the defense. One of these white-collar cases with electronic document banks, if you don't have an associate to help with the facility and grab the documents, you're really not able competently or effectively to proceed. But in terms of whether the conflict was unwaivable but not per se, the only difference is that in that case, the standard of review asks – it says, well, prejudice is presumed, and the court only looks to see whether there was a lapse in the representation. So it's a lapse that doesn't have to show outcome-determinative consequences. And here, three leap off the page. Failure to request a mistrial at the Curcio hearing, when you have a lawyer who is amazingly conflicted, later swiftly after the trial removed from the CJA panel, who is distracted, who is clearly – the government has leverage over him. There's failure by Ginsburg to assert himself sufficiently to preserve the objection to the jury charge, which Judge LaValle, as the Court knows, in your opinion, was the basis for rejecting the direct appeal because it was a plain-error standard. But all of those things are arguments about ineffective counsel, right? Well, two points. And there was plenty – there was opportunity to bring those claims, either in direct appeal or in initial 2255, right? Now three points. I mean, in direct appeal, this Court strongly disfavors ineffective assistance of counsel. Well, it may be. But my point is that the points you're making now are not points that couldn't have been made before, and they're well beyond what's in the Certificate of Appealability, right? No. No. I disagree, Your Honor. Why? Because the standard – this Court in Iorizzi said that if you have an unwaivable conflict, even if it doesn't meet the per se standard, vacator is necessary if there was a lapse in the representation. And so the question that's posed to the Court necessarily by the Certificate of Appealability is if there's an unwaivable conflict, was there a lapse in the representation? That standard does not require showing that the outcome would have been different. The Court has said it's not a prejudice standard. And so what are lapses in the representation? I've just said two, but a third one that I think is really important because it gets at the core of what this Court addressed in Fulton and in Kinsella about conflicts that permeate the representation, is that when someone's in Ginsburg's position and he doesn't know whether or not he's going to get a non-prosecution agreement or ask to be signed a cooperation agreement involving a guilty plea, when he is really at the mercy of the same U.S. Attorney's Office prosecuting his client, and when he, although according to the government at age 69, has been engaged in this conduct for a year and a half, chooses the middle of his client's trial to proffer and to seek the proactive cooperation agreement, that under those circumstances, every decision that becomes suspect, if you look at this Court's opinion in Arrington, when there's an actual and unwaivable conflict, but the conflict is only against one other affected party, the Court has asked, well, is there something that the lawyer refrained from doing because it would have been in detriment to the other party? Right? Holloway says that the evil is about what the lawyer might refrain from doing. But when the conflict is vis-a-vis the U.S. Attorney's Office, the affected adversary is the adversary in every decision that the lawyer makes. And in a case like that, it so permeates the representation that whether you say it's an actual conflict with a lapse in representation or whether you say it's a per se conflict, which I believe it clearly is, it falls within what Judge Winter and Kinsella described as Judge Friendly's controlling reasoning and Selina, then it requires vacateur. And I just want to, for a moment, address the government's primary defense here, which is procedural, and I want to note two things. In a federal case, a procedural default is a non-jurisdictional, waivable affirmative defense. And that's important because the government cites a lot of 2254 cases. Those cases involve exhaustion doctrines and how things were litigated in state court, the need to defer to state courts essentially to clean up their own messes. None of that happened here. This happened in a lower court that shares a building with this court. And so the only doctrine that applies is that if you didn't raise it in your direct appeal, you have to explain why. That's called cause, and then you have to show prejudice, meaning it would matter. And when an affirmative defense is raised for the first time, as it was here, and a appropriate time to address it is when responding to the motion to dismiss. And here, there are two largely undisputed, based on the record, undisputed causes for not raising this in the direct appeal. One is that appellate counsel was ineffective. She had an obligation to compile the record, and the government's claims that Tucker, who was at a maximum security – This all strikes me as way beyond the scope of the certificate of appealability. But anyway, we're way over time. Thank you. We have 30 minutes for rebuttal, so let's hear from Mr. Ferguson. Thank you, Your Honor. May it please the Court, Micah Ferguson, I'm an assistant U.S. attorney in the Southern District of New York. I represent the United States on appeal. I want to start where Mr. Silverman had ventured before he paused, and that's with the procedural defaults in this case. Now, there are strong – there's a strong independent basis to affirm on the merits, but for the sake of good order, this Court should first address – The certificate of appealability is with respect to a discrete legal question, so you're saying that it was wrong to issue that, or it's wrong for us to consider it because it's been procedurally defaulted. I think the procedural default is fairly within the scope of the certificate of appealability. I would also just note that, you know, the certificate of appealability argument in motion, it issues before we, the government, submits any written briefing. And so it's just really to give a closer look, and I would submit that, you know – All right. But you're urging us not to answer the question posed in the certificate of appealability. Correct, Your Honor, because it is procedurally – So you're afraid of the answer? I guess I'm trying to – No, by no means. And I'm happy to tell you – So let's then get to the merits, I think. Fair enough, Your Honor. I mean, I do think it's very simple to dispose of it on procedural default, but let me turn to the merits. And the merits – I want to clear one thing up. Did the defendant, did Tucker argue in the 2255 motion, did he argue non-waivability? No. He did not. In the initial 2255 motion, he did not even claim that it was a per se conflict. He claimed it was a potential conflict many times, calling it a potential conflict. And he also did not – Non-waivability is being raised for the first time before us. It is – it was raised in his reply brief in the district court. But Judge Castell, exercising his discretion, as he is fully in the right to do, as this Court has said many times, declined to consider the argument raised for the first time in the reply brief.  Turning to the merits, and I take Judge Sullivan's point that, you know, on this question of was this a per se unwaivable conflict, under this Court's precedence, it clearly was not. This Court has been adamant time and again that per se conflicts are limited to two narrow categories. An actually unlicensed attorney purporting to appear in court and thereby committing a crime and depriving that court of actually jurisdiction. It's a jurisdictional defect. And then more appropriately, you know, more apt to these circumstances, when that attorney is implicated in his client's own crimes that are going on trial. Okay. So then the point Mr. Silverman made was that, well, this is a variation on that or close to that because this is a situation where it's the same U.S. attorney's own. And so I guess that was my question to you. Are the cases in which courts have declined to find a per se unwaivable conflict with respect to lawyers charged with crimes, do any of them involve the same U.S. attorney's office? They do, Your Honor. And I think, you know, United States v. Levy is perhaps the most helpful case for the panel to consider. It's a 1994 decision. The case was in the Eastern District of New York. The attorney was not only being actively investigated by the Eastern District of New York, but if you read the opinion, it actually describes how he was awaiting sentencing. So he had also been charged and convicted in the Eastern District of New York, separate from a separate active investigation. This Court did not say that was a per se conflict. It analyzed it as an actual conflict. But an actual conflict can be waived unless no reasonable defendant would waive such a conflict. And I'm not sure we've seen too many cases that look like this. And in this instance, the conflict was waived at a Curcio hearing that seemed to have some of its own problems. Mr. Silverman was going through some of them. One of them is that he was seeking an unconflicted lawyer, an uninvolved lawyer, and it was denied. So would a rational defendant waive an actual conflict without the advice of an independent advisor as counsel? Respectfully, well, let me make one quick note, Your Honor, which is on Levy. It's my question, yes. And just to finish, Levy, the Court specifically notes in that case that there's no basis in the record for finding that the defendant had knowingly and intelligently waived the conflict, suggesting that even that conflict in Levy could be waived. Now, turning to this case. See, I'm sure an actual conflict can be waived. The question is, it's not waivable if nobody would waive it who is well advised. And turning to Your Honor's question, which is about the Curcio hearing in this case and whether Mr. Roth was independent, this Court's precedents do not suggest that independent counsel under Curcio and its progeny are anything other than conflict-free counsel. It makes no sense to Mr. Roth is a member of the CJA panel. He represents Tucker. He has represented him for some time. Why would another member of the CJA panel who knows nothing about the case, has never represented Tucker, does not have his confidence, doesn't know the trial or the procedural history, why would that person somehow be better advantaged to advise Tucker on this issue than Mr. Roth, who's already a member of the CJA panel? It simply makes no sense, Your Honor. And the fact that they're pointing to, well — I think the argument that's been made is that Mr. Roth was facing the prospect of defending a very serious criminal case that he really wasn't prepared to do. And therefore, he had an interest consistent with a legitimate concern for his client to make sure that the lawyer who was being accused of conflict was received a waiver. And I understand that that's what they say, Your Honor, but that's by no means clear. If that was the case, why would a Mr. Roth say, well, it's your decision, and if you choose this, we need to ask for a mistrial? Or an adjournment. Or an adjournment. I mean, there are many — he wasn't an ethically conflicted lawyer. Ultimately, this decision is up to Tucker. And to Your Honor's point on the standard, that no rational defendant could possibly choose this — It's the standard. And I understand, Your Honor. And just to address that point, the U.S. Attorney's Office does pretty well on retrials. I mean, once you start, perhaps Mr. Tucker thought, hey, I got a pretty good jury. Or maybe the U.S. Attorney's Office isn't as prepared as they thought they were. Or our cross-examinations have been going well. I mean, defendants may want to continue with their trial and go forward. That's a very rational position. Rather than seeing, well, now the government has seen our opening. They've seen our cross-examinations. They have more time to prepare. I'm going to be toast. I mean, it's totally rational to say, I think I'm not actually concerned about this conflict, which is what he affirms over and over before Judge Castel. And I think my best chance is to continue. I don't want a mistrial. I don't want an adjournment. And I don't actually think this conflict will affect Mr. Ginsburg's representation, which he affirms to Judge Castel. In fact, he's emphatic. He says it's — I absolutely wish to go forward with him. It is, quote, non-negotiable. I mean, he was a sophisticated businessman. He ran a billion-dollar company. I mean, it was a criminal enterprise, but it still takes some serious smarts to do something like that. He navigated and manipulated the legal system for years. I mean, he actually had Native American tribes as the, you know, the figurehead owners of this enterprise. And he was a sophisticated guy. He had an effective cursio hearing where he weighed all the potential conflicts and said it was non-negotiable that he continue with Mr. Ginsburg and continue with the trial. That is — He's a very sophisticated person. But the test is whether a reasonable defendant would agree to such a thing. And therefore, I'm not sure it matters that he is a — that he's a genius who managed to have a billion-dollar criminal enterprise. I think — I think that's fair. It may be an objective test, Your Honor. It just sort of illustrates the point that, yes, indeed, a very reasonable and smart defendant may choose to go forward with this. In closing, I would just say that even if this Court chooses to address head-on the merits and over — you know, sweep over a thicket of procedural issues and clear procedural defaults in this case, it should affirm expanding the category of per se conflicts or unwaivable conflicts will be bad for defendants in depriving them of their constitutional right to counsel of choice. It will put district courts in an impossible position. And it will encourage gamesmanship from defendants, saying, I insist on proceeding with this lawyer despite the conflicts. They're waived ostensibly. And then on appeal or at 2255, sometimes years after the fact, will say, oh, wait, it was unwaivable or it was per se. That's why this Court has time and again refused to expand these categories and narrowly construe them. It should do the same here and affirm Judge Castell's well-reasoned opinion and allow the emphatically waived conflict to be, in fact, waived. You're suggesting that the result might be different or should be different if the defendant at the Curcio hearing said, look, I have no choice. You're putting me in a position in which I have to face an unfair trial either way. So I'll agree. I think that would certainly be something for the Court to consider in its analysis. We are so far, we are on the opposite end of the spectrum in this case, in fact, where a sophisticated person, after having full opportunity to consult with independent counsel, affirming that he had no further questions, affirming that it was non-negotiable and he absolutely wished to proceed, waived any potential conflict. There was no suggestion by Roth of a need for more time. No. In fact, Judge Castell, and I believe this is at page 80 of the appendix, tells him, as much time as you need, Mr. Roth, to consult with your client. Then they come back and — No, I'm suggesting more time before the trial continues. Oh. Oh, you mean at the time of the Curcio? Yes. There was no request for an adjournment or additional time. That's correct. And, in fact, he was offered as much time as he needed by the Court. And Tucker himself affirmed he had had ample opportunity to discuss it, had a lengthy discussion with his lawyers about it, was fully comfortable, didn't have any further questions with the Court. That's all in the Curcio transcripts. All right. Thank you. Thank you, Your Honor. Mr. Kirkson will now hear from Mr. Silverman for rebuttal. Thank you. First, the district court, it's in the record, had told the jury in Tucker's presence that they were resuming at 1230. That's not all the time in the world. And Tucker's comment was that he – But the district court could have extended that if the district court wanted to, right? I don't know why Tucker would know that. Tucker is at the Curcio proceeding and says, I haven't seen the government's letters. The transcript suggests he had 15 minutes. It's very important that Roth himself asserts at the beginning that he does not think he's independent, and he's brushed aside. But why would he not be independent? You're basically suggesting that Roth has a separate conflict, which is a laziness conflict, because he doesn't want to have to assume responsibility for a trial where he's already counsel of record. And I don't see that as being – challenging his being a conflict-free counsel. It's absolutely not laziness. It's about whether he is competent to handle this magnitude. But that's a different – if he says I'm not competent, then he can say that, and that would be a basis for a different challenge, it seems to me. But you're saying he's not independent because he has some other motive as to why he might not want to be taking over the case. But if that's the case, it would seem to me he would be saying to his client, why don't you then not agree to waive this potential conflict? Because then we'll get a mistrial, and I won't have to do this. He made his assertion both that he didn't think he was independent and that he wasn't informed about the nature of the conflict, and he was shut down, and he stopped after that. But I think it's important that the government says, well, he was on top of the facts of this trial. That doesn't matter for the Curcio proceeding. What matters is was he on top of the facts of the conflict. And no one can say that he was because he said that he was not explicitly. And so when he says that he's not independent and that he's not on top of the facts, he's obviously not – Well, why does he need to be on top of the facts? It seems to me that what's in the Certificate of Appealability is the key fact, which is that Ginsburg has some potential need to curry favor with the U.S. Attorney's Office. But you think you need more facts than that? Anything upsetting on the proffer? It's not a potential – Well, we don't know what we don't know. We don't know how on the verge of indictment this lawyer was. We don't know how his case was resolved. We don't know what kind of immunity or not he received. But what facts are you saying that Roth needed to get up to speed on that an independent CJA lawyer who was on duty that day was going to have access to? Well, that's another problem is that the district court shut down access to the relevant information. But certainly – What was the relevant information that you think was necessary that wasn't developed? Why does this man think that he might be indicted? How realistic is it that he's on the precipice of indictment? Did he just sign a finsy letter? Is he an ongoing proactive cooperator? What does the nature of his proactive cooperation agreement with this United States Attorney's Office say? Why did he choose this United States Attorney's Office and not the one across the river or not the Manhattan DA's office? I mean, I'm not sure how any lawyer would get access to that information. Well, the judge could order it disclosed because it's part and parcel of this conflict that just emerged. It could order it disclosed at least in camera. He could order it disclosed in a sealed proceeding. I want to address Judge LaValle's question about was this raised below. I think it's a mischaracterization to say that it was raised for the first time in a reply brief. The pleading said, I have an affidavit from my client who tells me that there was a mid-trial conflict in cursio proceeding. I see no record of that. That's what's in the petition. And we put this at page 19 of our reply. And on page 21 of that motion for a 2255, they ask for a discovery including the transcript of the cursio proceeding and the filings related to the cursio proceeding. That discovery was produced by Mr. Scott and to me after the government moved to dismiss. And so I got a 30-day extension of time because I suddenly got the discovery. And it's only upon reading the transcript of what happened and seeing the government's letters that a lawyer can competently opine not just that there was a conflict, as was alleged in the 2255, but on the legal nature of the conflict, which is not something that relates to the claims to the pleading of the 2255. It's a legal argument that's only possible after receiving the discovery that was requested in the 2255 pleading and that was provided to me after the government moved to dismiss the pleading. I also want to note on page 21 of our reply, we quote the Supreme Court's Kyler decision, which I think is very relevant to some of what the government was talking about with respect to the cursio hearing. The Supreme Court wrote, the vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. So, Judge Sullivan, if the court were to talk about knowing involuntary waiver, would the Supreme Court and Kyler, C-U-Y-L-E-R, I don't know how to pronounce it, what they're saying is you have to essentially see was it a knowing involuntary waiver before the court can find it as a valid waiver sufficient to dispose of a case. Right, but we're talking about unwaivable. I agree. But it seems to me my concern is that you're suggesting that a defendant who has retained a lawyer to represent him. He didn't retain this lawyer. No, I'm saying, but this rule would apply regardless. This conflict doesn't turn on whether or not this is a court appointed or a retained lawyer. And so if an individual who is at trial has a lawyer and that lawyer then is charged with a crime, your view, it seems to me, is that that is not waivable. We have to get a new lawyer even if that person says I want this guy and I don't care that he's looking at charges in this district or any place else. So two points. You're saying that's unwaivable, right? Right. So two points, Your Honor. I think, and I would defer to Judge Jacobs to interpret the COA, but I think it's fair to ask that it says was the conflict waivable under these circumstances. And so that's a two-part question. One, is it unwaivable as a legal matter and was it, in fact, waived? Second, yes, Your Honor, I do think that's the right answer. I do think it is relevant that in this case. But you rejected that before, right, as adding that to the list of per se slash unwaivable. I disagree. But I would say, first, it is certainly relevant that in this case this was not the lawyer of his choice. The lawyer of his choice was taken from him. But that matters, you think, with respect to whether or not this is a waivable conflict. Clients who can retain lawyers get more leeway than people who get appointed. I wouldn't say that, but I think there's a two-part answer to that. The first is that one of the standards for conflict that the Supreme Court in Wheat says and this court reiterates is to preserve the integrity of the court. And when you have court-appointed counsel, it is not unreasonable for the court to consider the fact that they saddled this man with this counsel, right, that he wanted to have his own lawyer and his own lawyer was taken away from him and he was given this lawyer who discloses just midway through the trial. Your point is that if Paul Schechter was, you know, stayed in the case and then he was brought in for a proffer or was charged in this district, that would be an unwaivable conflict and he, too, would be out, right? Well, I think it would absolutely be prudent for this court to send instructions that if something like this comes up again, the court should declare a mistrial, that this should not be allowed to happen. In fact, it might have stopped the U.S. Attorney's Office from letting it happen. They had no obligation to let Ginsburg in in the middle of the trial to proffer in their office. They could have said go across the river to the Brooklyn office. They could have said go to the Manhattan DA or the Westchester DA. But the question is whether this is an unwaivable conflict. That's exactly right. And I think the question in terms of the ramifications, which is what I think the court's question is getting at, part of the ramifications would be that the U.S. Attorney's Office would receive the message that it should never let this happen, that it shouldn't let things get to this point. But never let it get to this point. I'm not sure I follow. Well, they should never have let Ginsburg in the door. Why two weeks into a trial do they let the attorney? This was a high-profile trial for their office. Why do they let the defense attorney, a man who we all knew well, show up in their office and say I need an immunity agreement to sit down at the table, confess things, ask for your help, and for some reason I can't go to my friends in the Brooklyn office, a different U.S. Attorney's Office. For some reason I can't go to Morgenthau's office. It was Morgenthau. For some reason I have to be here with you right now. They absolutely could have turned him away and said we don't want to deal with you on a Saturday at St. Andrews. They should have done that. And it would not be wrong to send a message to them not to allow that again. But to let him come in, give him a limited immunity agreement in writing, and then only tell the judge and the defendant after the fact, not before the fact. Judge, we want to let you know Mr. Ginsburg is coming to our office this weekend. We're going to give him a written immunity agreement. They could have done that. Maybe Judge Costello would have said don't do that. Maybe he would have said I think you want to think really hard before you do that. But I think that would be one of the ramifications of applying the per se rule absolutely, and I think that would be a good thing. But yes, Your Honor, this court would absolutely be in the right to say we will not let this happen, and certainly not with court-appointed counsel. It affects the integrity and the appearances of the whole courthouse. Thank you, Your Honor. Thank you. Thank you both. We will reserve decision.